UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X
             :

TIFFANY GUERRERO,         :
             :

          Plaintiff,   :
             :

     - against -     :
             :

THE CITY OF NEW YORK, et al.,   :
             :

        Defendants.  :
             :
--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/11/2018___

14-CV-8035 (VSB)

**OPINION & ORDER**

Appearances:

Regina L. Darby
Law Offices of Regina L. Darby
New York, New York
*Counsel for Plaintiff*

Shira R. Siskind
New York City Law Department
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Tiffany Guerrero brings this action against Defendants City of New York (the

"City"), Police Officer Jason Bronstein, Police Officer David Revans, and Police Officer Luis

Carrasquillo (together, the "Individual Defendants") alleging claims for false arrest pursuant to

42 U.S.C. § 1983 and New York common law, malicious prosecution pursuant to 42 U.S.C.

§ 1983, common law assault and battery, and violations of the New York State Constitution.

Before me are the cross-motions for summary judgment filed by Plaintiff and Defendants.  For

the reasons stated below, Plaintiff's motion for summary judgment is DENIED, Defendants'

motion for summary judgment is GRANTED IN PART and DENIED IN PART, and Plaintiff's

claims against Defendant Bronstein are dismissed for failure to serve.

## I.  <u>Background</u>

I.T., a seventy-five year old woman, was the victim of an assault and robbery at approximately 9:25 a.m. on January 18, 2012 in front of 2275 Cruger Avenue in the Bronx. (Defs.' 56.1 ¶¶ 1–2.)[1]  The responding officer, Officer Diogenes Cabrera, received a radio run about a robbery at 9:30 a.m., and he arrived at the scene of the robbery at 9:32 a.m.  (Defs.' Counter 56.1 ¶ 2.)[2]  According to Officer Cabrera and the Complaint Report, two females pushed I.T. to the ground and stole her purse.  (Defs.' 56.1 ¶¶ 2–3.)

Alvaro Gill was sitting in his car in front of 2230 Cruger Avenue at the approximate time of the robbery, (*id.* ¶ 4), and he saw two women running towards Pelham Parkway North, (*id.* ¶ 5.)  In his witness statement, Gill noted that he believed the women were racing each other. (Siskind Decl. Ex. F.)[3]  According to Gill, one of the women was white, had blonde hair with pink streaks, and was wearing black sweatpants and a backpack.  (Defs.' 56.1 ¶ 6.)

Gill subsequently witnessed a man get out of his car and start screaming for help.  (*Id.* ¶ 7.)  After Gill got out of his car to see what was going on, (*id.* ¶ 8), a police car arrived on the

---

[1] "Defs.' 56.1" refers to Defendants' Statement of Undisputed Facts, filed on March 24, 2017.  (Doc. 42.)  Plaintiff disputes four facts contained in Defendants' Statement of Undisputed Facts:  paragraphs 8, 25, 30, and 42.  (Pl.'s 56.1 at 10.)  As such, all references to Defs.' 56.1, apart from references to those four paragraphs, cite to undisputed facts.  In addition, Plaintiff objects on hearsay grounds to the following paragraphs:  1–11, 14–19, 22, and 24.  (Pl.'s Reply/Opp. 4.)  To the extent I rely on any of those paragraphs in my analysis, I address Plaintiff's hearsay objections below.  For those objections I do not address, I make no determination at this time as to the admissibility of that evidence.

"Pl.'s 56.1" refers to Plaintiff's Statement of Undisputed Facts, filed on March 28, 2017.  (Doc. 47.)

"Pl.'s Reply/Opp." refers to Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and in Opposition to the Defendants' Motion for Summary Judgment, filed May 2, 2017.  (Doc. 54.)

[2] "Defs.' Counter 56.1" refers to Defendants' Response to Plaintiff's 56.1 Statement of Undisputed Facts, filed on May 1, 2017.  (Doc. 53.)  References to Defs.' Counter 56.1 cite to undisputed facts, unless otherwise noted.

[3] "Siskind Decl." refers to the Declaration of Shira R. Siskind in Support of Defendants' Motion for Summary Judgment, and the exhibits attached thereto, filed on March 24, 2017.  (Doc. 43.)

scene, and an ambulance arrived a few minutes later, (Siskind Decl. Ex. F). Gill saw I.T. on the

ground bleeding with a swollen cheek. (Defs.' 56.1 ¶ 9.) According to Gill, I.T. stated that two

women had stolen her wallet. (*Id.*) She was then taken to the hospital for injuries sustained to

her face. (*Id.* ¶ 11.)

Defendant Revans arrived at the hospital and interviewed I.T. at 10:00 a.m. on the date of

the incident. (*Id.* ¶ 13.) I.T. reported that she was struck from behind and fell to the ground. (*Id.*

¶ 14.) Her assailants fled southbound on Cruger Avenue towards Pelham Parkway North. (*Id.*

¶ 16.) During this initial interview, I.T. told Revans that she could not identify her assailants.

(Revans Dep. 79:3-7.)[4] Officer Cabrera testified that he also took a statement from I.T. (Defs.'

Counter 56.1 ¶ 4.) She also reported to him that she could not identify her assailants. (*Id.* ¶ 5.)

Officer Cabrera filled out the Complaint Report at 10:14 a.m., (*id.* ¶ 4), which noted that I.T.

could not identify her assailants, (Siskind Decl. Ex. N).

After leaving the hospital, Revans conducted a canvass for video footage of the robbery,

(Defs.' Counter 56.1 ¶ 8), and obtained a surveillance video at approximately 11:00 a.m. of 2275

Cruger Avenue.[5] (Pl.'s Mem. Ex. W.) The video footage showed I.T. falling to the ground and

two individuals running from the vicinity of where I.T. fell. (Revans Dep. 72:19-25.) The video

did not show anyone taking anything from I.T., (*id.* at 73:2-4), nor did it clearly show the alleged

assailants' faces, (Defs.' Counter 56.1 ¶ 21; Pl.'s Mem. Ex. W). Revans testified that the video

---

[4] "Revans Dep." refers to the deposition of Defendant Revans on July 25, 2016, attached as Exhibit B to the Siskind Declaration. (Doc. 43-2.)

[5] There appears to be some confusion concerning what date Revans actually obtained the video footage, because the Rule 56.1 statements submitted by the parties indicate both that Revans obtained the footage on January 18 after leaving the hospital, (Defs.' Counter 56.1 ¶ 8), and that he obtained the footage on January 22, (*id.* ¶ 21). However, based upon a review of certain exhibits submitted by the parties, I assume that Revans obtained the video footage on January 18 at approximately 11:00 a.m., (*see* Pl.'s Mem. Ex. W), and scanned it into the case file on January 22, (Siskind Decl. Ex. N, at 8).

"Pl.'s Mem." refers to the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and attached exhibits, filed March 28, 2017. (Doc. 46.)

does not show a robbery, (Revans Dep. 73:8-25), although he noted that a robbery could have taken place outside of the frame of the camera, (*id.* at 113:22-114:3).

Gill states that at approximately 6:18 p.m. on the date of the incident, he saw one of the two women he had seen earlier at Pelham Parkway subway station, called 911, and explained to the police what he had witnessed and what happened that morning. (Defs.' 56.1 ¶¶ 18–19.) Police officers, including Officer Bronstein, arrived at the subway station and "seized"/"stopped" Plaintiff at approximately 7:00 p.m. (*Id.* ¶ 20; Defs.' Counter 56.1 ¶ 9.) None of the officers punched, kicked, or hit Plaintiff, nor did they touch her apart from handcuffing her and patting her down. (Defs.' 56.1 ¶ 21.) The officers informed Plaintiff that she fit the description of someone who had been reported to have committed a robbery earlier that morning. (*Id.* ¶ 22.) On the date of the incident, Plaintiff's hair was blonde, and the bottom layer was faded red. (*Id.* ¶ 23.)

The officers transported Plaintiff to the 49th Precinct. (Defs.' Counter 56.1 ¶ 10.) At approximately 8:00 p.m., Revans and Bronstein issued Plaintiff her Miranda warnings, and Plaintiff agreed to speak with Revans and Bronstein. (*Id.* ¶ 11.) Plaintiff told them that on the day of the incident, she was asleep in her home until 11:00 a.m., and she stayed in bed until the early afternoon. (*Id.* ¶ 12.) Her mother, grandmother, and girlfriend were also at home. (*Id.*) She only left the house in the early evening after an argument with her girlfriend, and followed her girlfriend to the Pelham Parkway subway station, where she was subsequently arrested. (*Id.*)

Gill provided his handwritten witness statement in Spanish to Defendants Revans and Bronstein later that night at the precinct at approximately 9:40 p.m.[6] (Defs.' 56.1 ¶ 24; Siskind

---

[6] Plaintiff states that Gill provided his witness statement at 9:45 p.m. (Defs.' Counter 56.1 ¶ 15.) However, the witness statement indicates that it was signed at 9:40 p.m., (Siskind Decl. Ex. F), and Plaintiff does not cite to evidence in the record to the contrary.

Decl. Ex. F.)  Gill's statement does not state that he saw the robbery.  (Siskind Decl. Ex. F.)

However, a police report—known as a DD-5—dated January 22, 2012 states that Defendants

Bronstein and Revans obtained a written statement from Gill, who witnessed the robbery.

(Defs.' Counter 56.1 ¶ 30; Pl.'s Mem. Ex. L.)  At approximately 9:45 p.m. on January 18, 2012,

Defendants Bronstein and Revans formally arrested Plaintiff.[7]  (Defs.' 56.1 ¶ 25; Defs.' Counter

56.1 ¶ 13; Siskind Decl. Ex. C.)

The next day, on January 19, 2012 at approximately 5:40 p.m., Plaintiff gave a statement

to the assistant district attorney assigned to the case and to Bronstein in which she insisted she

was innocent.  (Defs.' Counter 56.1 ¶ 16.)  Consistent with what she told officers the night

before, Plaintiff stated that she did not leave her home until approximately 7:00 p.m. after an

argument with her girlfriend, which is when the police stopped and arrested her.  (*Id.*)  She

claimed that there was video footage from the courtyard of her building that would show she did

not leave until later in the day, and she also claimed that there were alibi witnesses who would

corroborate that fact.[8]  (*Id.*)

On January 19, 2012 at 7:39 p.m., Bronstein swore out the criminal court complaint,

which alleges that Plaintiff committed the robbery.  (Defs.' 56.1 ¶ 31; Siskind Decl. Ex. H.)  In

the complaint, Bronstein swore that the grounds for the allegations against Plaintiff were:

> based upon official investigation, [Plaintiff's] statements, and witnesses known to
> the Police Department and video surveillance, that, at the above time and place,
> [Plaintiff] and an unapprehended female were acting in concert in that, they both
> approached [I.T.] from behind, striking her in the head causing her to fall to the
> ground, and that said unapprehended female grabbed her purse after which both
> [Plaintiff and the other assailant] ran from the location and each was observed to

---

[7] Plaintiff claims she was formally arrested at 9:40 p.m..  (Defs.' Counter 56.1 ¶ 25.)  However, the arrest report,
which Plaintiff cites to in support of her assertion, clearly indicates that the arrest took place at 9:45 p.m.  (Siskind
Decl. Ex. C.)

[8] Plaintiff tells essentially the same version of events in her affidavit filed in this case.  (*See* Doc. 46-39.)

be holding said purse.[9]

(Siskind Decl. Ex. H.)  Plaintiff was arraigned on January 20, 2012 based on the complaint.
(Defs.' Counter 56.1 ¶ 17.)  After spending nearly two days in custody, Plaintiff was released on
her own recognizance on January 20, 2012.  (Defs.' 56.1 ¶ 26.)  On January 24, 2012, I.T.
reviewed a photo array conducted by Revans and identified Plaintiff as the woman who had
punched her, stating that she saw Plaintiff when she looked up while she was on the ground.  (*Id.*
¶¶ 29–30.)

Plaintiff claims that on January 31, 2012, Revans brought in surveillance video from
Plaintiff's building from the date of the incident.  (Defs.' Counter 56.1 ¶ 29.)  Defendants object
to this fact, stating that Plaintiff's record citation to Plaintiff's Exhibit DD does not support the
statement.  (*Id.*)  Plaintiff fails to attach an Exhibit DD to any of her filings in support of her
summary judgment motion.  However, Revans testified at his deposition that he reviewed video
from Plaintiff's building approximately one week after Plaintiff's arrest.  (Revans Dep. 26:5-18.)
The video showed Plaintiff leaving her building only once on the date in question, at about 6:10
p.m.  (Pl.'s Mem. Ex. A.)  A Bronx County grand jury indicted Plaintiff on February 15, 2012.
(Defs.' 56.1 ¶ 35.)

After Plaintiff missed a scheduled court date, she was re-arrested in April 2012 by two
officers who were not involved in her first arrest, after which she spent three months at Rikers
Island.  (*Id.* ¶¶ 32–34.)  On July 26, 2013, the Bronx County District Attorney's Office
recommended to the court that Plaintiff's case be dismissed.  (Pl.'s Mem. Ex. A.)  The
prosecutor's recommendation states:

The assigned assistant met with the complaining witness on multiple occasions

---

[9] There is no evidence that the parties have pointed to suggesting that any witness observed either of the assailants
holding the purse.

since the case was indicted. In addition, video evidence of the incident was obtained. The events described by [I.T.] are substantially different from the events recovered on video. Specifically, [I.T.] described being robbed by two people. She stated that [Plaintiff] punched her, took her bag and then handed her bag to another female as they both fled. She described [Plaintiff] as a light skinned Hispanic woman with blonde hair and pink highlights throughout all of her hair. Contradicting the Complainant's description of events, the video shows one woman approaching the complainant from behind, struggling with the complainant for her bag, and pushing the complainant to the ground. A second woman, partly matching [I.T.'s] description, is seen on the video watching the incident from behind. Once the Complainant's bag is stolen, both women run away. In addition, she identified [Plaintiff] as one of the perpetrators. However, while she had pink highlights when she was arrested, the pink in her hair was only in the back of her head, while [I.T.] described the perpetrator as having pink highlights throughout her hair.

Since [Plaintiff] was arrested, she claimed she was innocent and provided the names of multiple alibi witnesses. She also directed law enforcement to surveillance video from her building. The assigned assistant interviewed three alibi witnesses who all stated that the Defendant was at home during the time of the robbery. In addition, they indicated and the Defendant stated that the only time she left was in the evening when she was arrested. Upon reviewing the video from the date in question, the Defendant is only seen at one point at approximately 6:10 p.m. leaving her building. At no other time is she seen entering or exiting the building.

(*Id.*) The court dismissed Plaintiff's criminal case on October 18, 2013. (Defs.' 56.1 ¶ 36.)

Carrasquillo was not assigned to Plaintiff's case, but he did create some DD-5s for the case. (*Id.* ¶¶ 37–38.) There is no evidence that he had any other involvement in the case.

## II.    Procedural History

On November 25, 2013, the City received a copy of a Notice of Claim, dated November 22, 2013. (Defs.' 56.1 ¶ 40.) Plaintiff commenced this action on October 6, 2014. (Doc. 1.) The City and Revans filed their Answer to the Complaint on May 18, 2015. (Doc. 10.) Carrasquillo filed his Answer on July 16, 2015. (Doc. 12.) There is no indication on the docket that Plaintiff has served Bronstein, nor has Plaintiff identified any evidence in the record that Bronstein has been served, and Bronstein has not appeared in this action.

On Mach 24, 2017, Defendants filed their motion for summary judgment, (Doc. 40),

along with a memorandum of law, (Doc. 41), Rule 56.1 Statement of Facts, (Doc. 42), and supporting declaration, (Doc. 43). Plaintiff filed her motion for summary judgment on March 27, 2017. (Doc. 45.) Plaintiff filed a supporting memorandum of law, with exhibits attached, on March 28, 2017, (Doc. 46), along with a Rule 56.1 Statement of Facts, (Doc. 47), and a supporting declaration, (Doc. 48). Defendants filed a memorandum of law in opposition to Plaintiff's summary judgment motion on May 1, 2017, (Doc. 51), together with a supporting declaration, (Doc. 52), and response to Plaintiff's Rule 56.1 Statement, (Doc. 53). On May 2, 2018, Plaintiff filed a memorandum in further support of her motion and in opposition to Defendants' motion. (Doc. 54.) Defendants filed a reply memorandum on May 16, 2017, (Doc. 57), together with a supporting declaration, (Doc. 58).

### III.   Legal Standards

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v.*

*Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## IV.    Discussion

Plaintiff asserts claims for false arrest, malicious prosecution, assault, battery, and violations of the New York State Constitution. Both parties move for summary judgment as to

each claim.  I first address and decide the issue of service on Defendant Bronstein.  I then address each claim in turn.

### A.   *Service on Defendant Bronstein*

#### 1.  Applicable Law

Rule 4(m) of the Federal Rules of Civil Procedure provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4.  A court must extend the time for service if the plaintiff shows "good cause" for its failure to serve timely.  *Id.*  "In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay."  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010).  An attorney's inadvertence or neglect is insufficient to demonstrate good cause.  *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 419 (S.D.N.Y. 2013).

Even if a plaintiff is unable to establish good cause, a court may still grant an extension under its own discretion.  *See Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007).  Generally, courts consider four factors in exercising their discretion:  "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service."  *DeLuca*, 695 F. Supp. 2d at 66.

#### 2.  Application

Plaintiff has failed to show good cause for her failure to serve Bronstein.  Plaintiff filed

her Complaint on October 6, 2014, (Doc. 1), and she filed affidavits of service with respect to all Defendants on January 26, 2015, except for Bronstein, (Docs. 3–5), indicating that Defendants were served in December 2014. To date, Plaintiff has not filed an affidavit of service with respect to Bronstein and has failed to provide any explanation for her failure to serve him, even after counsel for the other Defendants raised the issue of Bronstein's service in (1) an email to Plaintiff's counsel in December 2015, (Siskind Decl. Ex. J), (2) their Answers, (Docs. 10, 12), (3) their memorandum in support of their summary judgment motion, (Defs.' Mem. 16–20),[10] (4) their opposition to Plaintiff's summary judgment motion, (Defs.' Opp. 3),[11] and (5) their reply memorandum in further support of their summary judgment motion, (Defs.' Reply 5).[12] Similarly, Plaintiff ignores the issue in her summary judgment briefing, and thus, has entirely failed to demonstrate good cause, let alone any cause, for her failure to serve Bronstein.

Plaintiff has also failed to establish that I should exercise my discretion to grant an extension of the time to serve Bronstein. First, although it appears that the statute of limitations has likely expired on most, if not all, of Plaintiff's claims asserted against Bronstein—which weighs in favor of Plaintiff—courts have declined to extend the time to serve in similar circumstances where a plaintiff has failed to demonstrate diligence, establish good cause, and/or provide any excuse. *See, e.g.*, *Zapata*, 502 F.3d at 199 (affirming district court's denial of request to extend service deadline where statute of limitations had run and plaintiff had offered no excuse for failure to timely serve); *Vaher*, 916 F. Supp. 2d at 421 (denying request to extend

---

[10] "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, filed March 24, 2017. (Doc. 41.)

[11] "Defs.' Opp." refers to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, filed May 1, 2017. (Doc. 51.)

[12] "Defs.' Reply" refers to Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment, filed May 16, 2017. (Doc. 57.)

service deadline where statute of limitations had presumably run and plaintiff had offered no excuse for failure to timely serve).  Second, Plaintiff has presented no evidence that Bronstein had actual notice of Plaintiff's claims.  Third, Plaintiff has not suggested that Defendants have attempted to conceal any defect in service.  Moreover, as discussed above, counsel for the other Defendants have repeatedly raised the issue to Plaintiff's attention.  Finally, Bronstein would be prejudiced by permitting an extension.  The Complaint was filed nearly four years ago, discovery has been completed, summary judgment motions have been filed, and the statutes of limitations on many, if not all, of Plaintiff's claims asserted against Bronstein have expired.  Under these circumstances, I find that an extension would prejudice Bronstein.  *See Zapata*, 502 F.3d at 198. Therefore, Plaintiff's claims against Bronstein are dismissed for failure to prosecute.

### B.  *False Arrest*

#### 1.  Applicable Law

Plaintiff alleges claims for false arrest under New York common law against all Defendants and 42 U.S.C. § 1983 against the Individual Defendants.  To establish a false arrest claim, New York law and § 1983 both require a plaintiff to show that "the defendant intentionally confined him without his consent and without justification."  *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (citation omitted).  A defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to a successful § 1983 claim.  *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010)

Probable cause "is an absolute defense to a false arrest claim."  *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).  Probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a

crime," and "depends, in the first instance, on state law." *Dancy*, 843 F.3d at 107 (citations omitted). To determine whether probable cause exists, courts consider the "'totality of the circumstances' in light of the facts known to the arresting officer at the time of the arrest." *Creighton v. City of New York*, No. 12 Civ. 7454 (PGG), 2017 WL 636415, at *25 (S.D.N.Y. Feb. 14, 2017) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . ." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). The defendant bears the burden of proving probable cause. *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003).

"Information about criminal activity provided by a single complainant can establish probable cause when the information is sufficiently reliable and corroborated." *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir. 1994). It is "well-established that a law enforcement official may have probable cause to arrest based on information the officer obtains from some other person, normally the putative victim or eyewitness." *Creighton*, 2017 WL 636415, at *26 (citation omitted). "When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (internal citation omitted). However, "even if bystander witnesses are considered presumptively reliable, a report of a crime alone will not necessarily establish probable cause." *Oliveira*, 23 F.3d at 647.

Qualified immunity protects an officer "so long as he had arguable probable cause to arrest, which exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Dancy*, 843 F.3d at 107 (internal quotation marks omitted). "The

test is not toothless, however:  If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) (internal quotation marks omitted), *as amended* (Dec. 4, 2012).

## 2.  Application

Defendants contend that there was probable cause, or at least arguable probable cause, to arrest Plaintiff based on the information received from I.T. and from Gill.  (Defs.' Mem. 7–8, 14–16.)  Plaintiff disagrees.

As discussed above, Plaintiff's false arrest claim against Bronstein is dismissed because Plaintiff has failed to serve him, and therefore I need not engage in a probable cause analysis with regard to the claims against Bronstein.  Based upon a review of the evidence in the record as it relates to Revans and Carrasquillo, I find that probable cause, or at least arguable probable cause, existed to arrest Plaintiff.  In addition, I find that Plaintiff has failed to establish that Carrasquillo was personally involved in the arrest.

There is no indication that Revans played any role in the arrest of Plaintiff at 7:00 p.m. at the Pelham Parkway train station.  Revans testified at his deposition that he did not arrest Plaintiff and was not present when she was arrested.  (Revans Dep. 7:9-8:4.)  The parties have presented no evidence to contradict that testimony.  However, there is evidence that Revans, with Bronstein, issued Plaintiff her *Miranda* warnings at approximately 8:00 p.m. at the precinct. (Pl.'s Mem. Ex. O.)   In addition, Revans is listed as the "arresting officer" in a "Have Arrested Message."[13]  (Defs.' Counter 56.1 ¶ 13; Pl.'s Mem. Ex. T.)  Therefore, I consider whether

---

[13] The arrest report lists Bronstein, not Revans, as the arresting officer.  (Siskind Decl. Ex. C.)  However, because Defendants do not argue that Revans was not personally involved in Plaintiff's arrest, I assume that they concede that issue, and, as such, I do not address it.

Revans had probable cause to arrest Plaintiff when he issued her *Miranda* warnings at 8:00 p.m.

By 8:00 p.m., Revans had the following information available to him to inform his probable cause judgment: (1) the victim's statements at the hospital shortly after the robbery that she was robbed by two females, (Defs.' 56.1 ¶ 13; Revans Dep. 61:22-63:11); and (2) Bronstein's statements after he arrived at the precinct with Plaintiff that a witness sitting in his car that morning had witnessed the robbery and had identified Plaintiff at the train station, (Defs.' 56.1 ¶ 17; Revans Dep. 55:15-24, 62:12-63:5; *see also* Pl.'s Dep. 46:25-47:2).[14] I find that this is sufficient to establish at least arguable probable cause for Revans to have arrested Plaintiff. Revans had first-hand information from the victim that two females had robbed her, and that the female robbers ran down Cruger Avenue towards Pelham Parkway North. Pursuant to the collective knowledge doctrine—also known in New York as the "fellow officer rule"—Revans was entitled to rely on Bronstein's statements that an eyewitness to the robbery had pointed out Plaintiff as one of the individuals who committed the robbery. *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) ("Under the collective or imputed knowledge doctrine, an arrest . . . is permissible where the actual arresting . . . officer lacks the specific information to form the basis for probable cause . . . but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation."); *People v. Rosario*, 585 N.E.2d 766, 768 (N.Y. 1991) (describing the analogous "fellow officer rule"). The fact that Bronstein was mistaken in asserting that Gill was an eyewitness to the robbery does not alter the conclusion, as Revans reasonably relied upon his fellow officer's statements in

---

[14] Revans also had in his possession the surveillance footage that showed I.T. falling and two individuals running from the vicinity of where I.T. fell. (Pl.'s Mem. Ex. W; Defs.' Counter 56.1 ¶ 8; Revans Dep. 72:12-25.) However, the parties appear to agree that he reviewed the footage on January 22, 2012, four days after the arrest. (Defs.' 56.1 ¶ 27.) Therefore, it is not clear that he had reviewed the footage as of the time of the arrest on January 18, 2012.

"Pl.'s Dep." refers to the deposition of Plaintiff, conducted on May 2, 2016, attached as Exhibit A to the Siskind Declaration. (Doc. 43-1.)

making the arrest.  *See Cordero v. City of New York*, 282 F. Supp. 3d 549, 561 (E.D.N.Y. 2017) ("The probable cause determination does not rest on whether the instructing officer's observations were accurate, but on whether the arresting officer was 'reasonable in relying on those observations.'" (quoting *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994))).

Plaintiff contends that Bronstein's statement that Gill pointed Plaintiff out at the train station should not be considered on this motion because it amounts to hearsay and does not fit within any exception.  (Pl.'s Reply/Opp. 2–3.)  However, Defendants do not offer Revans's testimony about Bronstein's statements for the truth of the matter asserted, but rather to prove Revans's state of mind at the time he arrested Plaintiff.  (Defs.' Reply 3.)  Indeed, the fellow officer rule would have no effect if statements by one officer relied upon by another officer for a probable cause determination were deemed inadmissible.  As such, the testimony is admissible for the limited purpose of discerning Revans's state of mind when he arrested Plaintiff.  *See Tierney v. Davidson*, 133 F.3d 189, 192 n.1 (2d Cir. 1998) (holding that information provided to officer by anonymous caller and two bystanders was being offered for officer's state of mind, and was thus admissible).  Defendants are thus entitled to summary judgment on Plaintiff's false arrest claims.

Defendants argue that the false arrest claims against Carrasquillo should be dismissed for the additional reason that there is no evidence that Carrasquillo was personally involved in Plaintiff's arrest.  (Defs.' Mem. 8–9.)  Plaintiff does not address this argument in any of her papers, and therefore Plaintiff has conceded this argument.  *See AT & T Corp. v. Syniverse Techs., Inc.*, No. 12 Civ. 1812(NRB), 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) (concluding that plaintiff's "silence [in its opposition] concedes the point").  In any event, the first evidence of Carrasquillo's involvement in any aspect of this case is on January 19, 2012—

after Plaintiff was arrested—when Carrasquillo created certain DD-5s. (Siskind Decl. Ex. N, at 4.) Because Carrasquillo was not involved in any aspect of Plaintiff's arrest, Defendants are entitled to summary judgment on the false arrest claims against Carrasquillo.

Finally, because none of Plaintiff's false arrest claims against the Individual Defendants survive because there was probable cause to arrest Plaintiff, Defendants are also entitled to summary judgment on Plaintiff's common law false arrest claim against the City.

### C. *Malicious Prosecution*

#### 1. Applicable Law

Plaintiff brings claims for malicious prosecution against Bronstein, Revans, Carrasquillo, and the City. The elements of a malicious prosecution claim under New York law are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (citation omitted). In addition, § 1983 requires showing "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). Like a false arrest claim, probable cause is a complete bar to a malicious prosecution claim. *Savino*, 331 F.3d at 72. However, "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (internal quotation marks omitted), *as amended* (May 21, 1996).

An "indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino*, 331 F.3d at 72 (internal

quotation marks omitted). "Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have lied in order to secure an indictment, and a jury could reasonably find that the indictment was secured through bad faith or perjury, the presumption of probable cause created by the indictment may be overcome." *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010) (internal quotation marks omitted). The "lack of probable cause generally creates an inference of malice." *Id.* at 163 (citation omitted).

## 2. Application

Plaintiff's claims for malicious prosecution against Bronstein are dismissed for lack of service, as discussed above. Defendants contend that Plaintiff's claims for malicious prosecution against Revans and Carrasquillo fail because: (1) there was probable cause, or at least arguable probable cause, for the prosecution, in part because of the grand jury indictment; (2) there is no evidence the prosecution was motivated by malice; and (3) there is no evidence that Revans and Carrasquillo initiated the prosecution. (Defs.' Mem. 9–16.) Plaintiff argues: (1) there was no probable cause for the prosecution; (2) the indictment was procured by fraud or deceit; and (3) there is evidence that Revans contributed to the initiation and/or continuation of the prosecution. (Pl.'s Mem. 16–20; Pl.'s Reply/Opp. 5–17.)[15]

As an initial matter, Plaintiff has established that Revans was actively involved in at least the continuation of the prosecution against Plaintiff. Defendants argue that there is no evidence that Revans initiated the prosecution against Plaintiff, since it is undisputed that Bronstein swore and signed the criminal complaint. (*See* Defs.' 56.1 ¶ 31.) However, Defendants ignore the

---

[15] I note that pages 18 and 19 of Plaintiff's memorandum in opposition were not included in the papers submitted to the Court. (*See* Pl.'s Opp.)

question of whether the evidence shows that Revans played a part in the continuation of the prosecution. It is undisputed that Revans interviewed and took a statement from Gill after he arrested Plaintiff on January 18, (Revans Dep. 56:5-24); conducted a photo array including Plaintiff on January 24, (Siskind Decl. Ex. K); obtained surveillance video footage from Plaintiff's building approximately one to two weeks after Plaintiff's arrest, (Defs.' Counter 56.1 ¶ 29; Revans Dep. 26:5-18); and completed several DD-5s during the period between Plaintiff's arrest and the indictment, (*see, e.g.*, Siskind Decl. Ex. N, at 1, 2, 8, 9). Furthermore, it appears Revans turned over at least some of his files to the prosecuting attorney, though it is not clear precisely which files he turned over or when such files were turned over. (Revans Dep. 65:7-66:12.) Under these circumstances, I find that Plaintiff has presented sufficient evidence for a jury to infer that Revans took part at least in the continuation of the prosecution. *See Manganiello*, 612 F.3d at 163 (finding initiation-or-continuation satisfied where officer interviewed witnesses, completed DD-5s, and forwarded information to the assistant district attorney); *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) ("Although there is a presumption that a prosecutor exercises independent judgement in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." (internal quotation marks omitted)); *see also Blake v. Race*, 487 F. Supp. 2d 187, 211 (E.D.N.Y. 2007) (finding that officers were not shielded from liability by fact that prosecutor made decision to prosecute where officers supplied fabricated evidence).

There is not sufficient evidence, however, for either party to prevail on their summary judgment motions with respect to Plaintiff's malicious prosecution claims against Revans. First,

in at least one of Revans's DD-5s, he notes that Gill "witnessed this robbery while waiting to park his car," (Siskind Decl. Ex. N), an assertion that is contradicted by Gill's written witness statement, (*id.* Ex. F). Revans entered the DD-5 on January 22, four days after he took Gill's statement, (*id.* Ex. N), creating a reasonable inference that he was being untruthful. Second, as mentioned above, there is some evidence that Revans provided at least some of his files to the prosecuting attorney, but it is unclear what he turned over or when he turned them over. (Revans Dep. 65:7-66:12.) Therefore, prior to the indictment, he may or may not have turned over the false DD-5, and he may or may not have turned over the video footage of the site of the robbery and of Plaintiff's apartment building—both of which he obtained—which ultimately resulted in the dismissal of the charges against Plaintiff. (*See* Pl.'s Mem. Ex. A.) Given that neither party has presented sufficient evidence of what Revans turned over to prosecutors prior to the indictment, I find that there is a material issue of fact on the questions of probable cause and malice sufficient for Plaintiff's malicious prosecution claim against Revans to go to the jury.[16]

There is no evidence, however, that Carrasquillo provided false statements to prosecutors or was otherwise motivated by malice. Plaintiff does not argue otherwise. Therefore, Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claims against Defendant Carrasquillo.

In addition, Plaintiff has failed to provide any evidence to support, or even address, her § 1983 malicious prosecution claim against the City. Because Plaintiff has presented no evidence of a custom, policy, or practice on the part of the City that caused her constitutional deprivation, Plaintiff's malicious prosecution claim against the City is dismissed. *See Monell v.*

---

[16] Because the qualified immunity determination turns on whether or not there was arguable probable cause, and because I find that there is a material issue of fact as to probable cause with respect to the prosecution, Defendants' qualified immunity defense does not entitle Defendants to prevail on their summary judgment motion on Plaintiff's malicious prosecution claims.

*Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

### D.    *Assault and Battery*

Plaintiff brings claims for state law assault and battery against the Individual Defendants. When suing the City of New York or its employees, a plaintiff asserting state tort law claims against a municipal entity or its employees acting in the scope of employment must:  (l) file a notice of claim within ninety days after the claim arises, N.Y. Gen. Mun. Law § 50-e(1)(a), and (2) commence the action within a year and ninety days from the date on which the cause of action accrues, *id.* § 50-i(1).  Sections 50-(e) and 50-(i) have been strictly construed by both state and federal courts.  *See Dunham v. City of New York*, 295 F. Supp. 3d 319, 329 (S.D.N.Y. 2018).

There are no facts in the record before me that would permit Plaintiff's assault and battery claims to survive.  The facts allegedly giving rise to Plaintiff's assault and battery claims occurred in January 2012, requiring her to file a notice of claim no later than April 2012 and to file an action no later than April 2013.  Plaintiff did not file a notice of claim until November 2013, (Siskind Decl. Ex. O), and she filed this action on October 6, 2014, (Doc. 1).  Because Plaintiff failed to file her notice of claim and her complaint within the time periods prescribed by statute, Defendants are entitled to summary judgment on Plaintiff's assault and battery claims.

Plaintiff does not address the timeliness of her claims in any of her memoranda.  Rather, she includes one paragraph in her Rule 56.1 Statement claiming that her notice of claim with regard to her assault and battery claims related to her April 2012 re-arrest, not her January 2012 arrest.  (Pl.'s 56.1, at 10.)  However, the notice of claim contains no reference to Plaintiff's April 2012 re-arrest.  (Siskind Decl. Ex. O.)  Therefore, Plaintiff's passing argument in her Rule 56.1 Statement does not salvage her assault and battery claims.

### E. *New York State Constitutional Claims*

Plaintiff brings claims under the New York State Constitution against the Individual Defendants. "[V]arious federal courts in this circuit have held that there is no private right of action under the New York State Constitution where . . . remedies are available under § 1983." *Clayton v. City of Poughkeepsie*, No. 06 Civ.4881 SCR, 2007 WL 2154196, at *7 (S.D.N.Y. June 21, 2007) (internal quotation marks omitted); *see also Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439, 447 (S.D.N.Y. 1999) ("[N]o private right of action exists for violations of the New York State Constitution where a Plaintiff has alternative damage remedies available . . . under . . . § 1983."). Because Plaintiff has alternative damage remedies available under § 1983, which she has asserted in this action, Plaintiff's New York State constitutional claims are dismissed.

### V. <u>Conclusion</u>

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' motion for summary judgment is granted with respect to: (1) all of Plaintiff's claims against Defendants Carrasquillo and the City; and (2) Plaintiff's false arrest, assault, battery, and New York State constitutional claims against Defendants Revans. Defendants' motion for summary judgment is denied with respect to Plaintiff's malicious prosecution claim against Defendant Revans. Plaintiff's motion for summary judgment is DENIED in all respects. Plaintiff's claims against Defendant Bronstein are dismissed for lack of service.

Within thirty (30) days of the entry of this Opinion & Order, the remaining parties shall submit a joint pretrial order in accordance with Rule 6(A) of my Individual Rules & Practices in Civil Cases. On the same date, the parties shall also propose trial dates and a schedule for pretrial submissions pursuant to Rule 6(B) of my Individual Rules & Practices in Civil Cases.

The Clerk of Court is respectfully instructed to terminate the City of New York, Police Officer Bronstein, and Police Officer Carrasquillo as Defendants in this action. The Clerk of Court is also respectfully instructed to terminate the open motions at Documents 40 and 45.

SO ORDERED.

Dated: September 11, 2018
     New York, New York

Vernon S. Broderick
United States District Judge